Case number 20-1148, National Treasury Employees Union Petitioner v. Federal Labor Relations Authority. Mr. Shaw for the petitioner, Mr. Peters for the respondent. Mr. Shaw, proceed please. Good morning, and may it please the Court. I'm Bart Shaw for the petitioner, National Treasury Employees Union. In the 2-1 decision below, the authority of the Federal Labor Relations Authority held that an NTU bargaining proposal related to telework violated two management rights provisions in the Federal Sector Labor Statute. It marked the first time, as far as we know, that the authority has ever found a telework proposal to be non-negotiable. There are two major areas that I'd like to focus on today. First, the authority's misinterpretation of NTU's proposal. Second, the authority's failure to address contrary precedent. And third, the authority's failure to adhere to its own regulations or to explain its departure from them. First, the central issue in this case is whether the majority properly interpreted NTU's proposal, which would view it as creating a presumptive entitlement to 80% telework. If that interpretation is wrong, the statutory rulings at issue here, which flowed from that interpretation, can be sustained. And here, the authority's interpretation is plainly in conflict with the proposal's text, related sections of the party's existing telework article, and the bargaining party's shared understanding of the proposal. In contrast to the majority, neither of the bargaining parties interpreted the proposal's text as creating a presumptive entitlement to 80% telework. They view the proposal as allowing eligible employees to seek an additional one to two days of telework, with management retaining its discretion under the party's existing telework article to deny any such request. The parties, and this is reflected in the record of the post-petition conference, the parties understood the proposal would operate in conjunction with related sections of the party's existing telework article, and those sections make management's discretion here unmistakable. Among other things, those related sections speak to the agency's explicit discretion to deny a telework request or to rescind a telework arrangement if there is interference with the agency's ability to accomplish its work. The majority's interpretation of Venti's proposal hinges on this conclusion that Provision D of the proposal, which states that employee requests for extended telework will not be unreasonably denied, creates a presumptive entitlement to 80% telework. But nothing in the provision's language supports that conclusion. On its face, that language explicitly sanctions denials of telework requests so long as those denials are reasonable. And critically, neither of the bargaining parties viewed this language as limiting agency management's discretion to deny telework requests consistent with the party's contract. On appeal, the authority makes two points to defend the majority's interpretation of Venti's proposal. First, it says that the majority actually interpreted the proposal in the same way as NTU does, but that's simply not true. We do not agree that the proposal creates a presumptive entitlement to 80% telework. Second, the authority now says that the majority's interpretation was based on the potential application of Venti's proposal, which in the majority's view might lead to grievances and arbitrations. But that also isn't true. In footnote 11 of the majority's decision, which is on JA 228, the majority explicitly bases its interpretation of Venti's proposal on the proposal's plain wording, provision D, the unreasonably denied language. While it then, after setting forth that interpretation, speculated that in practice, this language might lead to grievances, that speculation was not the basis for its interpretation. And more fundamentally, those policy concerns have no bearing on the legality of Venti's proposal. A related point, Your Honors. Standing alone, the authority's failure to consider the related sections of the party's existing telework article renders each of its rulings arbitrary and capricious. That was plainly a failure to consider all of the relevant information. The bargaining parties explicitly agreed that NTU's proposal would operate in conjunction with those related sections. The authority has argued on appeal that the majority must have implicitly accounted for two of those four related sections because they were quoted, they were referenced in NTU's proposal, which the majority quoted. But nothing in the majority's analysis reflects that it took into account those related sections. And regardless, the authority on appeal has no explanation for the majority's failure to consider the two other related sections in the party's existing telework article, which explicitly speak to management's discretion to deny telework requests if there is any interference with the agency's ability to accomplish its work. As to the second category of legal error, the authority failed to deal with conflicting precedent that was directly on point. Mr. Shah, if I could ask you about those arguments, do we have jurisdiction to consider those arguments? Because we cannot consider an argument unless it was raised before the FLRA under Section, you know, 5 U.S.C. 7123 C. And our court and the Supreme Court have said that that's a jurisdictional argument. So did the union raise that before the FLRA? I mean, I don't think that it sought reconsideration, did it, of the FLRA's decision? And if it did not, then why aren't we barred from deciding that issue? Your Honor, I just want to confirm which issue Your Honor is speaking of. Is it the misinterpretation of their proposal issue? No. I mean, well, that issue was before the FLRA. But the other arguments that you made, that the FLRA sua sponte considered the right to direct employees and also that it departed from its own precedence without sufficient explanation, were those points raised? I mean, I assume they were, I mean, can the union point to a place where they were raised? Because I assume they would have been raised in a, you know, in a motion for reconsideration. But I don't believe there was one here. Your Honor, taking the issues one by one, our argument is that the authority failed to properly consider its 2011 decision in NAGE, which we believe is directly on point. NAGE was specifically argued below, and we provide the citation in our briefs. We argued that NAGE should have governed. And likewise, Member Dubester, in his dissent, agreed that NAGE should have governed. In terms of the authority's failure to sufficiently explain its departure from a specific area of its right to assign work precedent, which is a separate argument in our brief, we again relied on those cases in our briefs below. Where the authority has raised a 7123C argument, it relates specifically to a reliance argument. And we stated in our reply brief that, yes, we did not raise that reliance argument below. But even this argument about the failure to fully consider the precedent, it would seem that under our decision in Department of Commerce versus FLRA, that we wouldn't be able to consider this issue unless NTU raised them on a reconsideration motion before the FLRA. Your Honor, I'm sorry. So it doesn't matter whether or not the FLRA raises it. Your Honor, I'm not aware of any requirement that we seek reconsideration before filing a petition for review in this court. How would you distinguish the facts here from the Department of Commerce case? Your Honor, I don't have that case in front of me, and I don't believe raised in the briefing in this case. In general, Your Honor, the statute 7123C gives us a right to seek review of decision of the authority, which we have done here. Only for issues, however, that you raised before the FLRA. Yes. In terms of a failure to adequately deal with precedent on point, Your Honor, that's just a basic procedural error in our view. That is from the authority's decision, and I'm not aware of any separate requirement that we must seek reconsideration and raise that error before raising it in a petition for review in this court. So in the Department of Commerce case, we held that the jurisdictional provision barred our consideration of the issue because the agency there raised for the first time that the FLRA misconstrued its precedent. We said that we could not consider the petition for review because there was a failure of the government. In that case, it was the agency to reconsider on the ground that the FLRA had misconstrued its precedent. So isn't that, well, I mean, if you're not aware of that case, but I find it hard to see how your circumstance is distinguishable from the Department of Commerce case. Your Honor, I would have to take a look at that case, and we would be glad to submit something supplemental on that case if Your Honor prefers. Separately, we believe that the clearest basis for reversal here is the error that we just discussed. The plain misinterpretation of NTS's proposal from both of the management rights rulings that issue here flow. The misinterpretation of the proposal and the failure to consider what are indisputably pertinent provisions of the existing telework article, the errors would stand regardless of the issue that Your Honor just raised. And we believe the court needs to go no farther with those two issues. All right. Judge Pillar, do you have any questions? I don't think so. Thanks. All right. We'll give you a couple minutes and reply, Mr. Shaw. Mr. Peters. Thank you, Your Honor. So as far as to go to the argument that the union primarily relies on, which is that the authority misinterpreted the proposal, the authority squarely addressed this argument in footnote 11 of its decision, where it was addressing the dissenting member, and it said, the dissent reads the proposal as though it merely sets forth minimum requirements for telework while allowing supervisors unlimited discretion to deny telework requests from eligible employees. But that reading cannot be squared with the proposal's plain wording, which creates a presumptive entitlement to 80% telework. For employees who have teleworked at least six days per pay period the previous year and have not had any performance or disciplinary issues, the proposal creates a strong presumption that all such requests will be granted by mandating that telework requests from eligible employees will not be unreasonably denied. In practice, this means that any manager who denies 80% telework to an eligible employee could expect a grievance. So, Mr. Peters, so it's a two-step proposal. There's the more limited telework, and then there is the expanded telework. But as a threshold to either or both of those, there are the various provisions that are basically expressly preserving management prerogatives. And is it your view that those that once someone had completed a year of the more limited telework, that those somehow go away, or can't they, they could still be asserted, presumably, by management? The fact that management might have little escape hatches within the proposal to deny telework for various stated reasons. Well, those are pretty substantial escape hatches. We don't need to quibble about the characterization, but the agency never asserted that the prior proposal was non-negotiable. And presumably, it's because they felt that it allowed them adequate management prerogatives, no? Well, so the reason why the agency objected to this proposal was because it added in the language that requests for 80% telework or extended telework will not be unreasonably denied. And so we can see how that would work in practice from two of the cases that the authority overruled. In HHS, the agency had made a determination that it was mission critical that grievance be in the office to work with others through brainstorming and daily interaction, developing a new strategy. An arbitrator said, no, we don't, I don't find that that's substantiated, and the authority agreed with it. With that in that case, and then the authority in this case overruled that. In USDA, Detroit District 2004, the agency determined that certain positions were not amenable to plexi-place agreements. Once again, arbitrator said, I don't agree, and the authority said, well, upheld the arbitrator. So the risk that, the impact on management's right in this case was not theoretical. I mean, the union calls it a get wild assertion or a chain of extraordinary change of speculation. Just those two cases that the authority cited, that was just the facts. The agency had made a determination as to the categorization and the- I follow that argument up to a point. The difficulty that I have is that the unreasonably denied only comes into play after the agency has checked the boxes. It's way back at the beginning, the threshold boxes. This is not something that for us is, and I don't have the language right in front of me, but this is not one of those, not so just one of those, what you call escape hatches. And so the unreasonably denied is only, only applies after the agency has not deployed an escape hatch. Is that right? I don't believe that that's necessarily right because the language is unqualified. It just says that employee requests for expanded telework will not be unreasonably denied. I would think that that would leave up to an arbitrator the grounds for the agency's decision to deny expanded telework. So you're reading that to apply. I mean, this is not an argument that I saw anywhere prior in this case or in your briefing here, but you're reading that the unreasonableness to, to modify that perhaps the agency does have to approve expanded telework for somebody who's had performance or disciplinary issues. If denying them would be on that ground would be unreasonable or an employee whose work is not amenable to a telework arrangement. You're anticipating a grievance on the ground that that decision was made unreasonably? Well, so the, the way this would work is there absolutely would be a grievance if expanded telework were denied, because it says if that was unreasonable. So perhaps there's an issue even with respect to something like discipline. So just to be clear, if the agency says, I'm going to deny this telework request under the prior policy that the parties bargained for, which allows me, the agency, to deny telework if approving it would interfere with the agency's ability to accomplish its work. I just, I need these people to be here in person. I can't, they can't work remotely. I need them to be here to get the job done. So those people don't even get, get any telework at all. And presumably the agency could determine that even for somebody who had had a year of telework under the limited telework, right? And just say, no, this is, this is going to interfere with our ability as an agency to accomplish our work. Well, so the fact is there wasn't the expanded telework category. So first off, the fact that the parties previously agreed to something. No, I understand that. Yeah. Not determinative, but the expanded telework category and the unreasonably denied language is new. I get that too. For this proposal. So the union basically says, look, they can deny, the agency can deny for a litany of reasons, for any reason. But if that's true, and note that the authority just said that this, its holding was simply that this affected management's rights. If that's true, that, that, and I don't think it is, that the telework can be denied for any reason or no reason. And it doesn't place any constraints on that choice. That would still, under the authority's holding, it can still be bargainable as a procedure, right? So a procedure that management will observe. So, and that was not an argument that was raised by the union. So, but again, I think that the, another clue here is if you look at joint appendix 15, the, which is a, not this specific proposal, but it is part of the proposed article. The telework is not an entitlement as crossed out. And it's replaced by the use of telework is not an entitlement unless an employee meets the criteria for eligibility established under this article. So the clear, that's just a way of amplifying the fact that the unreasonably denied language, that the authority read this correctly. The authority, and the agency also urged this repeatedly, that the combination of the expanded telework category, plus the expanded telework will not be unreasonably denied, means that there are substantive constraints on management's ability to deny telework because it creates the prospect, the very real prospect, that the denial will be grieved. And it also just linguistically, if you look at it, employee, the phrase employee request for extended telework will not be unreasonably denied, means that you can pretty much expect that if you're in that category, and you're a manager, manager, that the employee is pretty much entitled to that. And the manager will have very, will have a real uphill climb in saying, no, we're denying it. I'm having a hard time following that given what I'm referring to as these threshold prerogatives on the part of the agency, which remain in the policy. And so the unreasonableness is only assuming that none of those prerogatives prevented telework in the first place. And I don't see the extended telework as enhancing the nature of the employee's bid for telework. It just expands the scope, and it's still subject under the expressed terms of the proposal. It's still subject to all of those threshold prerogatives. So it's just, I mean, I understand it's a practical matter. People can grieve anything, and arbitrators can make mistakes, but that's not really the gravamen of your argument. I mean, you know, the notion that people would bring baseless grievances, and that there's some risk that any employer faces that an arbitrator could wrongly credit them. That seems to be only an argument if there's actually a basis in the agreement for the kind of, you know, just all I need to show is reasonableness. I don't even need to satisfy my employer that telework is consistent with the agency's ability to accomplish its work. Well, to be fair, though, that presents the layering of the unreasonableness language makes all of those preliminary determinations by the agency also potentially subject to arbitration. So it makes the entire denial. Aren't they subject to arbitration anyway? I mean, they wouldn't succeed, but formally they're still subject. Right. So the question that the authority answered was, does this have an effect on a management right? Is there some effect here on management's right to assign work and direct employees from this article? And the union is arguing no, because they are entirely free under the article to deny telework for even for reasons not listed for any reason. And the fact that there are a lot of reasons in the articles that the agency could cite to deny telework doesn't mean that it doesn't have an effect on management's rights. It just means that, well, there's a slight effect, perhaps. Maybe it's not that bad of an effect, or maybe it's an effect, but it's a tolerable one. And really, the agency should just live with that. But the issue here is just whether it has an effect. And so if there's, again, there's an exception under management rights for procedures by which management's rights will be exercised. So if the union is free to argue, look, all we're doing here is just channeling management's discretion into a series of procedures, right? They have to say that the job is suitable for telework. They have to say that the employee has shown a fitness for telework, right? And there's all sorts of little procedural boxes. But this is just at the end of the day, it's a procedure for exercising management rights. That's an argument that remains open to the union. And the union didn't raise that. And in fact, in the 1979 decision, in the oldest telework case that we have in the books, that's exactly what the authority held. A proposal with all sorts of little qualifications and guidance of discretion, that was held to be a procedure. But here, the issue... Yeah, no, I get that from the briefing. I just, because we're running out of time, wanted to ask you about the nature of the justification that the authority gave. Do you think the position, the authority's and or the agency's position, rested on recognizing a management right to determine the place where work is to be performed? So I think that it recognized that requiring employees to be out of the... A proposal that would effectively create a class of employees who have to be allowed to telework 80% of the time has effects on the agency's means of supervising those employees. And it also has an effect on their ability to assign work schedules to those employees, which the authority has long held to be an aspect of the... It doesn't affect work schedules. I mean, it was interesting that the authority kind of elides them by saying that the right to assign includes the right to determine when an employee is required to report to the duty station to fulfill his or her duties. But it doesn't really make sense given that if you're teleworking, your duty station is your alternative work site and nothing about this proposal, nothing about it affects the timing of when you can be required to report to your duty station, does it? So it certainly affects whether you can be required to report to the office. Right. That's a different question though. Right. That's a where question, not a when question. But so even in the Big Spring case, which the authority cites, that was even where the employee works within a duty station. I know, but that was a prison. That was a prison. That was where it matters where you are. Whereas here, under the threshold determinations, the management has signed off on the notion that it doesn't matter, that the employee can do their work somewhere else. And the agency never established or even argued that the timing of the work itself changes with the location. Never made that argument. So with the analogy to when work is performed, which is clearly a well-established... Absolutely. There's no, to prove that a proposal affects management's rights in that context, there's no tie to the nature of the work saying, well, that only applies if there's some tie between the time of day when the work is performed and the work itself. So for example, in the case where employees were, the proposal to allow employees to work from home that would be performed over the weekend, the agency didn't have to argue, well, and their work just has to be performed during the weekday. There's no way around it. That's not even in dispute. But I guess my initial question, and maybe you could just tell me whether you think this is yes or no, is does the authority's ruling rest on recognizing a management right to determine the place where work is to be performed? Yes. I mean, it's recognizing that whether work is performed in an office versus at home has effects on the supervision methods that the employer can use. For example, having to monitor employees' work virtually, not being able to have drop-ins, not being able to have unscheduled interactions. So for example, the case where the proposal that employees work behind a locked door. Right. Can you point us to anywhere specifically in the agency's briefing before the authority that it made any argument about or even mentioned methods of supervision? I think it said more broadly, it said that this affects their right to direct employees. And it supported that with lengthy argument that treated the right to assign work and direct employees together. But I think the import of the argument, we have the right to tell employees to come into the office, is that this has an effect on supervision methods. That was really provided by the authority. I mean, the agency never even separately cited the subsection providing for a right to direct employees in its briefing. It never cited that. Right. You're right that they assimilated the right to assign and direct, kind of like, you know, which work are you doing and which work is another employee doing. But the supervision argument comes up with agency. I mean, sitting here today, I have no idea whether the agency cares or finds this to be an impediment. Maybe when people are in the office, it does most of the supervision by email or Skype. I know we do that sometimes in my chamber. So it just seems like this is a classic case of that not having been raised before, you know, in the process. So the cases, for example, that about working behind a locked door and all that discusses the right to assign work and direct employees together. So that was both an assigned work and direct employees case. So the management rights are very commonly discussed together, these two, including authorities. But the other thing I would note about this is that the agency had the burden to raise arguments that it wanted the authority to consider. So the authority has a questionnaire that they put down as far as which management rights. On J-64, is FMS asserting a management right set out in USC 7106A? Yes, it is asserting its right to determine the mission and organization of the agency and its right to assign work and direct employees. And it's not required to create a factual record. And this goes back to the 1980s. Parties are not required in the negotiability petition to create kind of detailed factual records about, well, this would affect employees in this bargaining unit, this bargaining unit, this bargaining unit. But Mr. Peters, we're really far from that because here, and I mean, I had drawn the opposite conclusion from the citation there, 7106A, the agency refers only to mission and organization and right to assign and doesn't even mention right to direct. So, and this really feeds into what, you know, the primary kind of failure to explain aspect. You know, the agency never established or even argued that the timing of the work itself changes with the location, nor did the agency ever argue that its ability to supervise these kinds of employees in this kind of job was impeded by telework. And then the authority doesn't distinguish the most closely analogous precedence. It just says we'll no longer follow cases holding otherwise. What about its distinction of the HHS case and the FDA case explains the reasoning for that, or what do you understand to be its reasoning for no longer following those cases? So, I mean, first off, the idea that, and this goes back to the DC Circuit's own cases, the DC Circuit has not required agencies to introduce evidence in support of its claim that employees proposal infringes the implicated management right. And that's from a 1982 case, 691 F second, 553 footnote 49. But the other fact is, so as far as the NAGE 2011 case, I agree that that wasn't, with Judge Rao, that that wasn't presented to the authority. I mean, there was never a, an argument from the, from the union that NAGE, the 2011 case should control. And I think that that, the proposal there, which just said, it was just said bare, just eligible is sufficiently distinguishable on its face that if it wasn't, there was no requirement for the authority to discuss it because it's just a, all it said is employees will be eligible. It had no restrictions on, on management. So, Mr. Peters, do you believe that we are jurisdictionally precluded from considering that issue? Yes, I would agree with that. I think that the, the issue of whether NAGE is on all fours is not raised by the union before the authority at all. It was, it was just cited as one of many cases, but it wasn't, there was not this wholesome argument that NAGE is on all fours was certainly not presented to the authority. Let me, let me ask you another question. I mean, if we did have jurisdiction, I mean, one of the authority's arguments to the, to what the union has, has argued is that the agency didn't in fact forfeit these arguments about the right to, you know, these, the various specific management rights that they weren't forfeited before the FLRA. And so my, I guess my question is, is what is the FLRA's ability to, like say we assumed that the agency did forfeit its argument, what authority does the FLRA have to excuse such forfeiture? Because the regulation allows the FLRA to excuse for, excuse forfeitures when appropriate. And so what standards does the FLRA use for that? So I think that I, I know that there is authority case law, there have been authority cases, for example, where even when parties seek to dismiss negotiability appeals, the authority will say, no, we, we feel like the labor management community is benefited by our decision. So it will even not even respect the party's desire not to have a case decided in some cases, there is precedent that we can get you on that, where the authority said, no, we want to decide this. And so what this, the, there isn't a lot of, so basically the cases cited by the union in support of its forfeiture argument are cases where a party made a bare assertion or presented no explanation of how the proposal would affect the management right. I mean, at the very least, the agency here presented an elaborate explanation of how the proposal would affect the management right. It wasn't, in some ways, it wasn't the precise reasoning used by the authority, certainly, but there, there isn't a whole lot of case law here on the finer, on the gray area, perhaps gray areas where a party says no, like in this case, we believe that it infringes on the right to direct employees. And says that the management rights are overlapping as it did in its brief. But then, you know, it doesn't make quite the same argument that the authority ended up making so the cases that the union sites are really just, they said nothing, or bear. And it does seem, I mean, it does seem to me that this regulation, it's not even clear that the regulation imposes a mandatory requirement on the agency to, to not consider arguments that are forfeited. That's absolutely, yes, that is absolutely right. That is completely true. All it says is a party must raise and support its argument. So I think what it does is it creates a ground floor of you can't, you don't have a right to have the authority decide this issue if you don't raise it. But it doesn't limit the authority's discretion to consider things. And in fact, agencies, as you well know, routinely do that very frequently, will consider issues that are not raised by parties. And it creates interesting issues for this court when, when ideas, when, I mean, the authority has certainly raised issues sui sponte in many cases. So that is absolutely right, there is, it doesn't limit what the authority can say it limits what And I think that's in sharp contrast to the statutory exhaustion requirement on us on this court, which is jurisdictional. Yes, that is absolutely right. The 7123 bar is been is jurisdictional. This is really just give to give parties notice of what they have to say in their briefs in order to get the authority to decide an issue that they wanted to decide. But of course, there's legions of cases where the authority has raised issues sui sponte and it creates very difficult 7123 issues sometimes when that happens, but not not here in this case. All right. Mr shop. Why don't you take Two minutes and let me say before you respond that when I caucus with my colleagues, because this jurisdictional issue is a frankly a new one to me. I'm going to ask both of you. And hope my colleagues agree with this to submit something on jurisdiction and on forfeiture. So in other words, I'm saying you don't have to answer everything in the next two minutes and refute the jurisdiction issue. Thank you, Your Honor. A few points. To begin, I just want to make sure that we're clear on the the operation of the proposal. Because that was discussed at length and management's hands are not tied in the way that our friend on the other side indicated to set at the ground level, you know, apply for expanded telework. Certain things have already occurred. The agency is already determined that because of your position of your duties, your physical presence. Isn't required in the office for the days you're teleworking you have a fully successful performance rating. Could they change their mind on that they'd let you do a year at the limited telework you want extended telework, you know, Either the agency's assessment of how it's gone or that something about the nature of the work has changed. They say your physical presence is now required. Is that subject to a reasonableness overlay or not. Yes, the agency can change his mind. If any point to believe that the telework arrangement is interfering with the accomplishment of the agency's work as explicit in Section 20.06 of the existing telework article, it can rescind the telework arrangement and even beyond that, if there is a specific And it's not. And in terms of whether it's subject to this reasonableness overlay is everything in the what I'm referring to as the threshold Conditions for telework subject to reasonableness overlay or no There is an explicit there is not explicit reasonableness language in the existing telework article is simply gives the agency that authority to make that call and it says decisions will be made on a case by case basis in terms of the interference with the agency's ability to accomplish work. So at any point. That was a little bit hedged. You said it's not explicit is that is it the union's position that it's implicit. I mean, this is actually really important in terms of Mr. Peters is objection. Your Honor. So two things. One, one, the text is is not cabin whether an agency would disagree with An agency's view on this particular point. You know, I, I don't know. So, for example, under under 20.06 other considerations, the approval or disapproval of an employee's request for telework will be based on whether the approval will interfere with the employer's ability to accomplish its work. The employer gets to make that decision. Yes, that is correct, Your Honor. Unilaterally The employer makes the call unilaterally But that's not to say, Your Honor, that If on its face that that that conclusion is Baseless, for example, that there may not be disagreement on that point, but Now, does that, is that something that the grievability of which has changed or would change under the proposal. No, no, Your Honor. The proposal inserts limited language into the existing telework article. So the provision we were just speaking about Regarding the interference with the agency's ability to accomplish work that is language that is already in the existing telework article that would be retained The, the proposal would simply supplement the existing telework article Right, but you're saying that if they had if they made up a reason that it didn't interfere with the ability, the employer's ability to accomplish its work. Before this proposal. You're saying if they just made up a reason that would be subject to grievance. Your Honor, my understanding It doesn't change because of this, what I'm calling the reasonableness overlay. Yes, Your Honor, but my, my understanding is the status quo would remain in terms of And it wouldn't become more agreeable on a new ground because of the not unreasonably denied provision that applies to extended telework Yes, exactly. Your Honor, the status quo would hold us to 20.06 the new language regarding expanded telework. It's a supplement and the the provision in question here regarding Employee request for expanded telework not being unreasonably denied. That is, again, a second layer of management discretion, even after you've jumped through all the hoops. And you're one of the employees who the agency says is in an ideal circumstance for telework for six days per pay period. You've already met that threshold. Then you apply for the expanded telework agency management again can deny that request consistent with with the proposal. So There is no situation here where the agency management is being dictated to about who can come to work or having You know, the union dictate how employees are going to be supervised. There are several layers of agency discretion here. And again, both of the bargaining parties viewed it that way. The record is clear that both of the bargaining parties agreed that management would retain its existing discretion. Under the party's existing telework article when it came to when it comes to denying telework requests. That's essential and that can be reconciled with this presumptive entitlement to 80% telework that the majority Believes exists based on the plain wording of the proposal. There is no support for that and it's squarely in conflict with the record. Second, Your Honor. Much of what you heard today from the authority related to telework grievances complaints about grievances and that's true. Also, in the agency's briefing below Those are policy arguments that have no bearing on the legality of our proposal. This is a matter that should be sold at the bargaining table. If the agency doesn't like our language. It can counter it. If the agency doesn't like telework grievances. Well, the scope of the negotiated grievance procedure is itself negotiable. They can do things to take care of their policy concerns and they should do it at the bargaining table. Those things bear no relation to the legality of our proposal. Next, I just want to make sure we're clear on the the right to direct argument in terms of the regulations and what I think is undisputed that the agency below made no mention of employee supervision whatsoever. I want to make clear that our argument is based both on the regulations and the authorities interpreting precedent. That precedent uniformly holds that where agencies do not support their management rights arguments where they're just bare assertions. The authority will not rule upon those arguments. We cited a case in our reply brief issued during briefing in this very case where there was a telework dispute. The agency raised the same two management rights arguments that are at issue here. The right to assign work and the right to direct employees and the authority held. It wasn't going to consider those arguments because they were bare assertions. But Mr. Shaw, those precedents don't tell us whether the authority has the ability or the authority to consider forfeited arguments. They just tell us that in those cases, they refuse to decline to reach a forfeited argument. It doesn't tell us whether they must not reach a forfeited argument. So two things, Your Honor. One, the regulatory construct into space party is raising and fully supporting their arguments and the authority adjudicating those arguments. And as Your Honor pointed out, hasn't explained and didn't explain in his decision when it will nonetheless reach management's rights arguments that were not made below. Even if Your Honor is correct that the authority has that discretion to reach arguments that were not made, there is nothing in the decision to explain when that is appropriate. And so this court is unable to address whether the majority's rationale and reaching the argument below was arbitrary or rational. It needed to explain why it chose to really create and then adopt that supervision argument. And again, you know, the regulations aside, there was no explanation for the authority's departure from its precedent, which, and there's no dispute about this, consistently holds that management rights arguments will not be reached where they're just bare assertions. All right, please wind it up. You have one more point. Yes, the last point I want to make is just just on the the nays decision, and whether it was raised below at a 179, you'll see that the nays decision among many others was by into below. And that decision, we believe is on all fours with this case and should have governed below. Thank you. All right, we have your arguments, Madam Clerk.
judges: Henderson, Pillard, Rao